IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY M. MARIER and ELIZABETH D. MARIER, ) <br> ) <br> Plaintiffs, ) <br> ) <br> -vs- ) <br> ) <br> LANCE, INC., ) <br> ) <br> Defendant. ) | Civil Action No. 06-1298 |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Plaintiffs Terry M. Marier ("Marier") and Elizabeth D. Marier, husband and wife, assert a single claim against Defendant Lance, Inc. for defamation. According to Plaintiffs, one of Defendant's managers made defamatory statements about Marier and his wife that resulted in Marier's termination after over 30 years of employment. Plaintiffs seek damages in the form of lost income as well as compensation for mental anguish, humiliation, emotional distress and loss of capacity for enjoyment of life.

Before the Court is Defendant's Motion for Summary Judgment dismissing the Complaint. For the reasons set forth below, I grant Defendant's Motion in its entirety.

1

A. <u>APPLICABLE LEGAL STANDARDS</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir.), <u>cert. dismissed</u>, 483 U.S. 1052 (1987). However, as the Supreme Court has recently emphasized, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Scott v. Harris</u>, 127 S. Ct. 1769, 1776 (2007) (internal quotations omitted). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Id.</u> (emphasis in original).

B. <u>FACTS AT ISSUE</u>

Plaintiff Marier was employed by Lance as a Route Sales Representative beginning in 1974. His immediate supervisor was Mike DeMann ("DeMann"), who in turn reported to Ed Allman ("Allman"), Defendant's District Manager in Pittsburgh. In October 2004, Marier complained to Defendant's CEO about Allman's conduct relating to Marier's absences from work after the death of his sister. Marier received an apology from Defendant. According to Plaintiffs, after that incident,

Allman made unreasonable job demands of Marier and frequently criticized him.

On Memorial Day 2006, Marier did not work. The parties dispute whether or not Marier was required to work that holiday. On Thursday evening, June 1, 2006, DeMann called Marier at home to inform him that a disciplinary letter, referred to as a "strike letter," had been issued for his failure to work on Memorial Day. According to DeMann, during their conversation Marier repeatedly used the word "f–k" as well as other profanity, and also stated that Allman "could shove [the strike letter] up his ass." Marier refused to meet with DeMann to go over an employee counseling form, and refused to sign the strike letter. This conversation was conveyed to Allman by DeMann via e-mail on Thursday night. (Def. Ex. FF.)

The following day, Allman called Deb Smith, Defendant's Human Resources Director for the Eastern Region, related DeMann's conversation with Marier, and recommended to her that they terminate Marier's employment based on insubordination. (Def. Ex. D at 15.) Allman also spoke with Marier and set up a meeting for Monday morning. Ms. Smith spoke with Jerry Estes, the Corporate Human Resources Director for Sales, and informed him of Marier's profanity and insubordination, that Allman had recommended termination and that she agreed. The parties dispute who had the final authority to terminate Marier's employment, at what point a final decision to terminate was made, and whether the decision was subject to review.

On Monday morning, Allman asked two other employees, Mark Glave and Greg Sulc, to witness the meeting between Allman, DeMann and Marier. The meeting

occurred in the stock room. According to witness statements and deposition testimony, Marier admitted to using profanity during his Thursday evening conversation with DeMann and conceded that it was possible that he told DeMann to tell Allman to shove the strike letter "up his ass." Again according to the witness statements and deposition testimony, Allman then informed Marier that he was being terminated for insubordination. Marier, by contrast, testified that he was merely told that he was being recommended for termination.

Allman, Glave and Sulc began unloading product from Marier's truck into the stockroom. According to the witness statements and deposition testimony, Marier became very upset, using profanity and yelling directly in Allman's face. Marier refused to leave because he did not trust them to do an "honest inventory" and feared he would improperly be charged for shortages. He continued to yell, curse and get in Allman's face. Sulc, who was concerned that the situation would degenerate into a physical confrontation, called the police. Marier's wife arrived at the scene and began crying and cursing when she was informed of Marier's termination.

By the time the police arrived, Marier had calmed down and was waiting outside the stockroom. The police spoke with Marier and Allman. Allman agreed that, if Marier left, he would not be charged for any shortages. At that point, Marier, his wife and the police left. Marier circled his truck around one time to ask about compensation for unused vacation time.

After the meeting, Allman called Smith to relate the events of the stockroom

meeting. Smith then sent an e-mail to Estes informing him that Marier had been terminated, who passed on the notification to Earl Leake, head of Human Resources for Defendant. Smith also requested that Sulc, Glave, Allman and DeMann prepare written statements about what occurred at the stockroom meeting. These statements (the "Witness Statements") were written later that day and forwarded to Smith by Allman. (See Exs. 1-4 to Def. Ex. I.)

On June 6, Allman noticed a red car driven by a man park briefly outside his house. Allman believed that Marier's wife owned a similar car and was concerned that Marier was near his house. Allman reported his suspicions to Smith and to Glave, both of whom recommended to Allman that he call the police. However, Allman claims that, given his uncertainty as to the identity of the driver, he was hesitant to make a complaint. Ultimately, Allman told Sulc, who had an acquaintance at the Bethel Park police department, and who informed them that there was nothing for the police to do but note it in a record.

Plaintiffs' defamation claim is based on the following statements purportedly made by Allman to Smith and Estes, which allegedly resulted in Marier's termination: (1) that Marier had threatened to "F– Allman up"; (2) that Mrs. Marier had threatened to kill Allman and her kids; (3) that the police had to be called to escort them both off Lance property; and (4) that Marier had stalked Allman.[1] Estes and Gabbard

---

[1] In the Complaint, Plaintiffs also allege that Allman told Smith and Estes that Marier had assaulted him and that Allman had to call the police on account of Plaintiffs' assault. (Def. Ex. A, at ¶ 13.) However, Plaintiffs' briefs in opposition and in sur-reply appear to have re-characterized the alleged defamatory statements as set forth above.

5

confirmed at their depositions that these statements had been told to them by Smith and Allman.  (Pl. Ex. 9 at 111; Def. Ex. R at 96-98).

It is undisputed that Marier did not work for Defendant after June 5, 2006. Marier remained on Defendant's payroll through June 26, 2006.

### C. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

To state a claim for defamation under Pennsylvania law, a plaintiff must prove: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to plaintiff; (6) special harm resulting to plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. Sabo v. Metropolitan Life Ins. Co., 137 F.3d 185, 196 (3d Cir. (1998), cert. denied, 525 U.S. 1129 (1999).

Defendant has moved for summary judgment on the following grounds: (1) the allegedly defamatory statements were the truth; (2) the statement regarding stalking is a non-actionable opinion; (3) the communications were protected by conditional privilege; and (4) plaintiffs cannot establish actual damages arising from the defamation.

With respect to the "truth" of the defamatory statements, Defendant relies on the Witness Statements to support its argument that these allegedly defamatory statements were actually made by Plaintiffs, such that Allman only conveyed the truth when he related them to Smith and up the human resources chain.  Truth is an absolute defense to a defamation claim. Simms v. Exeter Arch. Prods., Inc., 916 F.

Supp. 432, 437 (M.D. Pa. 1996) (applying Pennsylvania law). "The defense is met so long as the defendant proves the statement to be substantially true." Tucker v. Merck & Co., 102 Fed.Appx. 247, 253, 2004 WL 1448015, at *5 (3d Cir. June 29, 2004); see also, Bakare v. Pinnacle Health Hosp., Inc., 469 F. Supp.2d 272, 298 (M.D. Pa. 2006) (granting summary judgment on grounds that statement was true). "Pennsylvania has determined proof of substantial truth must go to the 'gist' or 'sting' of the alleged defamatory matter." Keeshan v. The Home Depot, U.S.A., Inc., 2001 WL 310601, at *15 (E.D. Pa. Mar. 27, 2001), aff'd, 35 Fed.Appx. 51 (3d Cir. 2002).

This defense applies to the alleged statement that the police had to be called to escort Plaintiffs off the property. The uncontroverted evidence, including the Witness Statements and police report, establishes that the police were called and that the police left at the same time as Plaintiffs. While this evidence technically may not establish that Plaintiffs were "escorted off the property," it does render the statement substantially true. See, e.g., Keeshan, 2001 WL 310601, at *16 (granting summary judgment where proof goes directly to the 'gist' of the alleged defamatory matter because it deals precisely with the alleged defamatory statements).

However, the witness Statements relied upon by Defendant do not establish that Mrs. Marier told Allman that she would kill herself, her kids and him. While the Witness Statements demonstrate that Mrs. Marier was upset and yelling, and that she threatened to kill herself and her kids, none of the witness statements confirm that Mrs. Marier told Allman that she would kill him. This alleged threat against

Allman, which is the basis, in part, of Plaintiffs' defamation claim, is not substantially the same as the threats against herself and her kids related in the Witness Statements. In addition, Mrs. Marier has denied making any of those statements. (Pl. Ex. 14, at 18.) Accordingly, Defendant has not met its burden of demonstrating that this statement was substantially true.[2]

Defendant further argues that Allman's alleged statement that Marier was stalking him constitutes non-actionable opinion. Whether a particular statement is opinion is a question of law for the Court. See Green v. Mizner, 692 A.2d 169, 174 (Pa. Super. Ct. 1997). "It is clear that expressions of pure opinion that rely on disclosed facts are not actionable." Feldman v. Lafayette Green Condo. Ass'n, 806 A.2d 497, 501 (Pa. Commw. Ct. 2002). In Feldman, the court affirmed the lower court's dismissal of a defamation claim premised on defendant's accusation of "harassment" with respect to plaintiff. The court explained that where the use of the term was accompanied by disclosure of the facts supporting defendant's opinion that plaintiff's behavior constituted harassment, the statement was a non-actionable expression of opinion. Id. at 501-02; see also, Fetters v. First Hosp. Corp., 34 Pa. D. & C.4th 366, 373, 1997 WL 1008444, at *5 (Pa. Com. Pl. Aug. 8, 1997) (statement accusing employee of "misconduct," along with description of alleged misconduct, constituted non-actionable opinion), aff'd, 736 A.2d 687 (Pa. Super. Ct. 1999)..

As an initial matter, there is no direct evidence that Allman actually used the

---

[2] In addition, Defendant argues that two of the statements (that Marier threatened to "F-" Allman up and that Plaintiffs committed assault) were never published. (Def. Br. at 6.) The record reflects that Estes and Gabbard testified that these statements were told to them by Allman or Smith. Defendant has not submitted evidence that these statements were truthful.

8

term "stalk" when referring to the possibility that Marier had stopped outside Allman's house. For this reason alone, Plaintiffs' claim must fail with respect to this statement. But even assuming that such a term was used, Plaintiffs have not refuted Allman's and Smith's testimony that Allman explained that a red car that he "thought" or "believed" belonged to Marier's wife, and that he "thought" was driven by Marier, parked outside his house briefly. (Def. Ex. C, at 31; Pl. Ex. 8, at 76.) Accordingly, I find that the conditional nature of the communication and the disclosure of the underlying facts demonstrate that this statement constitutes non-actionable opinion as a matter of law.[3]

The remaining two statements upon which Plaintiff's claim is based – that Marier threatened to "f-ck Allman up", and that Mrs. Marier threatened to kill herself and/or her kids and Allman - are not defamatory in character, and thus cannot support Plaintiffs' claim. "The threshold question in a defamation action is whether the communication at issue is capable of a defamatory meaning." Goralski v. Pizzimenti, 540 A.2d 595, 597 (Pa. Commw. Ct. 1988). "A communication is considered defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id. at 597-98. "It is not sufficient. . .if the words are merely annoying or embarrassing to plaintiff." Id. at 598. In evaluating whether the words are defamatory, "[t]he nature of the audience seeing or hearing the remarks is also a

---

[3]While it is unclear whether Plaintiffs are relying on the alleged statement that Marier "assaulted" Allman, that statement, bolstered by Witness Statements describing the incident, is also non-actionable opinion.

9

critical factor in determining whether the communication is capable of defamatory meaning." Id. "Initially, it is the function of the court to determine whether the communication complained of is capable of defamatory meaning." Maier v. Maretti, 671 A.2d 701, 704 (Pa. Super. Ct. 1995), appeal denied, 694 A.2d 622 (Pa. 1997); see also, Feldman, 806 A.2d at 500 ("Whether a challenged statement is capable of defamatory meaning is a question of law for the court to determine in the first instance."). "If the court determines that the challenged publication is not capable of defamatory meaning, there is no basis for the matter to proceed to trial." Id.; see also, Remick v. Manfredy, 238 F.3d 248, 261 (3d Cir. 2001) ("The trial court must determine as a matter of law whether the communication is capable of defamatory meaning; if not, the claim should be dismissed.").

The Pennsylvania Superior Court's opinion in Maier is closely analogous to the facts herein. In Maier, plaintiff alleged that her supervisor falsely told the manager that plaintiff had made the following statement to the supervisor: "You better play ball with me, or I'm going to put your f–cking head through the wringer with your extramarital affair." 671 A.2d at 703. Plaintiff argued that the false attribution "implied that [she] is vulgar, crude and grossly insubordinate, and indicated that [she] is intemperate, lacks integrity and self-control." Id. at 704. According to plaintiff, she was terminated from her employment as a result of this false attribution. Id. at 703.

The Superior Court affirmed the lower court's grant of summary judgment for defendant, holding that the statement "was incapable of defamatory meaning." Id.

AS the court explained, "[a]ttributing the quotation to appellant clearly embarrassed appellant, but it in no way lowered the community's estimation of appellant. First, alleging someone is crude, vulgar and insubordinate is not as offensive as other statements which have been characterized as incapable of defamatory meaning." Id. Further, "Pennsylvania case law holds that the nature of the audience is a critical factor in determining whether the communication is defamatory." Id. at 705. The court noted that "[t]he statement was a report by appellee to the branch manager and personnel director of Sears. The statement was not intended for a large audience; therefore, there was no harm to appellant's reputation in the community." Id.; see also, Beckman v. Dunn, 419 A.2d 583, 587-88 (Pa. Super. Ct. 1980)(statements communicated to limited audience of university administrators not capable of defamatory meaning).

Similarly herein, the statements attributed to Plaintiffs may have caused them embarrassment and annoyance. But these statements, published in the limited forum of Defendant's human resources department, cannot as a matter of law lower Plaintiffs' estimation in the community or deter third persons from associating with them. Accordingly, I hold that the remaining statements are incapable of defamatory meaning.[4]

Having found that the statements at issue are either the truth, opinion, or not defamatory in character, I grant Defendant's Motion for Summary Judgment

---

[4]Similarly, the term "assault" is not capable of defamatory meaning in the context in which it was used. See Remick, 238 F.3d at 262 (use of term "extort" is "non-defamatory rhetorical hyperbole").

dismissing the action. I need not reach the issues of whether the statements are privileged or whether Plaintiff can establish special harm.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### ORDER OF COURT

AND NOW, this **23rd** day of October, 2007, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is Ordered that the Defendant's Motion for Summary Judgment [Docket No. 31] is GRANTED. Judgment is entered in favor of Defendant and against Plaintiffs. This case is "Closed" forthwith.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge